UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**HAROLD LOSCHEN,**

    **Plaintiff,**

vs.                                  **Case No.: 8:12-CV-1819-T-30EAJ**

**CAROLYN W. COLVIN,**[1]
**Acting Commissioner of**
**Social Security Administration,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI").

After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the Court recommends affirming the Commissioner's decision and dismissing this case.[2]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with

---

[1] The current acting Commissioner of Social Security, Carolyn W. Colvin, is substituted for Michael J. Astrue, former Commissioner of Social Security. See Fed. R. Civ. P. 25(d).

[2] The district judge referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rule 6.01(a), M.D. Fla.

applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, the reviewing court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I. Background

On February 11, 2009, Plaintiff filed an application for SSI, alleging a disability onset date of July 31, 2008. (T 36, 126-32, 193) Plaintiff's application was denied initially and upon reconsideration, and an administrative hearing was held on November 2, 2010. (T 36) Forty-seven years old at the time of the hearing, Plaintiff has a limited education, having completed the eleventh grade, and past relevant work as a roofer. (T 17, 42)

On November 19, 2010, the ALJ denied Plaintiff's application. (T 44) The ALJ determined that Plaintiff's severe impairments included diabetes, lower extremity peripheral neuropathy, hypertension, gastroesophageal reflux, and major depression. (T 38) The ALJ further found that these impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. (Id.)

The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work subject to the following limitations: lifting, carrying, pushing, and pulling ten (10) pounds occasionally and five (5) pounds frequently; sitting for a maximum of six (6) hours and walking/standing for a maximum of two (2) hours in an eight-hour workday; occasionally climbing stairs and ramps; and occasionally balancing, stooping, and crouching. (T 39)  However, Plaintiff cannot climb ladders, ropes, or scaffolds. (Id.)  He also cannot kneel, crawl, or work around dangerous moving machinery and unprotected heights. (Id.)  Plaintiff must have only occasional interaction with the public and no detailed or complex work tasks. (Id.)

While concluding that Plaintiff could not perform his past relevant work, the ALJ determined that Plaintiff was capable of performing other jobs available in significant numbers in the national economy such as medical supplies assembler, scale attendant, and data checker. (T 30, 43) Consequently, the ALJ found that Plaintiff was not disabled during the relevant time period and denied Plaintiff's claim. (T 44)  On July 26, 2012, the Appeals Council denied review of the ALJ's decision, making it the final decision of the Commissioner. (T 1-6)

The medical and other evidence has been reviewed in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II. Analysis

On appeal, Plaintiff claims that the ALJ erred by failing to properly evaluate Plaintiff's credibility and to include all of Plaintiff's limitations in the RFC assessment.[3]

---

[3] Plaintiff listed three issues in his memorandum of law, but two of the issues are combined as they both pertain to the ALJ's credibility assessment.  Plaintiff's memorandum of law fails to comply with formatting rules for double spacing, and Plaintiff shall comply with this rule in future filings.  See Local Rule 1.05(a), M.D. Fla.

**A.** Plaintiff contends that the ALJ's credibility determination was flawed because she did not give sufficient reasons for discounting his allegations about the severity of his conditions. He also argues it was improper for the ALJ to consider that none of his treating or examining physicians opined that he was disabled. Additionally, Plaintiff faults the ALJ for focusing on his daily activities and for failing to hear testimony from a witness who was prepared to corroborate the impact of his limitations.

Subjective complaints are evaluated according to a three-part "pain standard" that is used when a claimant attempts to establish disability through testimony about pain or other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)(per curiam). A claimant must show: (1) objective medical evidence of an underlying medical condition; and either (2) the objective medical evidence substantiates the severity of the pain from the condition; or (3) the objectively determined medical condition is of sufficient severity that it would reasonably expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam). If the ALJ does not credit a claimant's testimony regarding subjective complaints, the ALJ must "articulate explicit and adequate reasons for doing so." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam). A clearly articulated credibility finding that is substantially supported by the record will not be overturned. Id. at 1562 (citation omitted).

The ability to engage in routine activities of short duration such as housework or fishing does not disqualify a claimant from receiving disability benefits. Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997). However, an ALJ may properly consider a claimant's daily activities, among other evidence, in assessing a claimant's credibility. Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir.1987) (per curiam) (citation omitted).

Plaintiff alleges disability due to extremity numbness, diabetes, hypertension, gastroesophageal reflux disease ("GERD"), and depression. (T 18-19, 40, 198) At the hearing, Plaintiff testified that he experiences numbness in his feet and toes. (T 18) His legs begin to hurt if he stands for longer than a couple of hours (T 19, 24), and he cannot walk very far due to his leg discomfort and shortness of breath (T 19, 25-26). If his blood sugar drops too low, Plaintiff stated that it takes several hours for his dizziness and fatigue to dissipate. (T 18) Plaintiff said he can keep his diabetes under control with proper eating and insulin injections, but he has difficulty eating at times. (T 18-19) He reported that his medications cause nausea on a daily basis. (T 23)

Frustrated that he can no longer be active, Plaintiff testified that he "feel[s] down," lacks motivation, and suspects that people look at him in a funny way. (T 20, 24) He takes Prozac for depression and struggles to overcome his malaise. (T 23) He naps for an hour every afternoon and spends a lot of time on the couch watching television. (T 20, 24) Plaintiff also visits regularly with his mother at her home and goes grocery shopping with his girlfriend. (T 20) Several friends and a nephew visit Plaintiff at his home. (T 20-21) He occasionally does the dishes. (T 20)

In making her credibility determination, the ALJ found that, while Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, Plaintiff's statements about the frequency, intensity, and duration of his symptoms were not credible to the extent that they conflicted with his RFC for sedentary work. (T 39-40, 42)

In support of her conclusion, the ALJ cited evidence that was inconsistent with Plaintiff's allegations about the severity of his complaints, including treatment notes from the Tampa Family Health Center reporting no significant abnormalities from January 2008 through June 2010. (T 40) In particular, the ALJ observed that Plaintiff's records showed that his diabetes, hypertension,

paresthesia,[4] and nausea were improving in January 2008, July 2008, and August 2008. (T 40, 293, 295, 309)  In an October 2009 visit, Plaintiff reported intermittent chest pain for a week, with the pain lasting two to three minutes and spontaneously resolving. (T 40, 418)  At that clinic visit, he also complained of shortness of breath, GERD, and depression. (Id.)  However, the ALJ observed that Plaintiff did not return to the clinic again until June 17, 2010, when the physician noted he was non-compliant with his medications. (T 40, 414)  Even so, Plaintiff showed no lesions on his feet, demonstrated normal sensation in his feet, normal balance, normal gait, and no peripheral neuropathy. (T 40-41, 414)  Additionally, Plaintiff stated that he did not have any cardiovascular symptoms and a heart physician told him that his heart was fine. (T 414)  He denied chest pain and discomfort. (Id.)

The ALJ acknowledged that podiatrist Stanley Kaplan, D.P.M. ("Dr. Kaplan") noted numbness and decreased sensation in Plaintiff's feet in July 2008, April 2009, and December 2009. (T 40, 303, 354-55, 402)  However, the ALJ also observed that Plaintiff's treating physicians did not report similar findings despite Plaintiff not being fully complaint with his treatment. (T 41)  The ALJ explained that, within seven to eight months of Plaintiff's diabetes diagnosis in 2007, his condition showed significant improvement and his examinations were consistently negative. (Id.)  His hypertension and GERD symptoms were well-controlled with medication, and no functional limitations were documented. (Id.)  The ALJ stated that there were no reports of continuing or adverse side effects from his medications. (Id.)

---

[4] Paresthesia is defined as "a sensation of prickling, tingling, or creeping on the skin having no objective cause and [usually] associated with injury or irritation of a sensory nerve or nerve root." Webster's Third New International Dictionary 1641 (3d ed. 1976).

6

As to Plaintiff's depression, the ALJ explained that Plaintiff was prescribed antidepressants, but the record lacked any reference to mental health treatment or significant abnormalities in Plaintiff's mental status. (T 41) The ALJ also discussed a consultative examination by psychologist Gerald Mussenden, Ph.D. ("Dr. Mussenden") in September 2008 as part of a prior application for benefits. (T 41) Dr. Mussenden found Plaintiff frustrated and discouraged, with a depressed mood and no motivation or interest in interacting with others. (T 41, 312) However, Plaintiff also showed good recall, adequate control of his thoughts and behavior, moderate focus and concentration, the ability to apply judgment to problem situations, and the ability to adapt to change. (T 41, 311-12) Diagnosing Plaintiff with major depressive disorder and pain disorder associated with depression, Dr. Mussenden assessed Plaintiff's Global Assessment Functioning ("GAF")[5] score at 60, indicating borderline mild to moderate difficulties in social and occupational functioning. (T 41, 313) The ALJ observed that in a June 2010 physician's visit, Plaintiff reported bereavement over the recent loss of his son but denied other significant psychological symptoms. (T 42, 414)

The ALJ also observed that no treating or examining physician found Plaintiff unable to work and that Plaintiff's daily activities, including caring for his personal needs, shopping, watching television, and doing some household chores, were consistent with an RFC for sedentary work. Based on these specific findings, the ALJ concluded that the medical evidence did not support Plaintiff's claims about the severity of his symptoms.

---

[5] The GAF describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). A GAF score of 41–50 indicates serious symptoms; a score of 51–60 indicates moderate symptoms; and a score in the range of 61–70 indicates mild symptoms. Id. at 32–34.

In challenging the ALJ's assessments, Plaintiff alleges that his complaints were supported by evidence from Tampa Family Health Center, Dr. Kaplan, and Brandon Regional Medical Center.[6] However, the only records from Brandon Regional Medical Center are related to Plaintiff's December 21, 2007 admission due to new onset diabetes. (T 277-84) They show that Plaintiff was released two days later in stable condition with discharge notes indicating that his blood sugar was controlled and he was doing "much better[.]" (T 277) He was able to engage in "activity as tolerated." (Id.) Moreover, as addressed above, the ALJ explained that treatment notes from both Tampa Family Health Center clinic and Dr. Kaplan did not substantiate Plaintiff's allegations about the severity of his symptoms. Plaintiff does not cite any contradictory evidence within those records.

Nor did the ALJ err in observing that none of Plaintiff's treating and examining physicians found Plaintiff disabled. (T 42) Contrary to Plaintiff's characterization of the ALJ's opinion, the ALJ did not impose her own "personal requirement" that a treating or examining physician find Plaintiff disabled. (Dkt. 13 at 4) Rather, the ALJ observed that no physicians had opined that Plaintiff was disabled or "even significantly limited in ability to perform work-related physical or mental activities." (T 42) Noting that a non-examining state agency physician found Plaintiff capable of performing light work (T 378-85), the ALJ gave Plaintiff the benefit of the doubt and adopted greater limitations by restricting Plaintiff's RFC to sedentary work. (T 39, 42) As such, the ALJ appropriately considered the entire record, including the lack of opinion evidence supporting Plaintiff's allegations regarding the disabling effects of his impairments as part of the credibility assessment.

---

[6] Plaintiff refers to the three health care providers generally and does not cite specific records that support his allegations. (Dkt. 13 at 5) "Such a cursory treatment of a potentially important issue is taken by this Circuit to be a sign that the party has abandoned the argument." Callahan v. Barnhart, 186 F. Supp. 2d 1219, 1230 n.5 (M.D. Fla. 2002) (citations omitted).

Also, the ALJ was permitted to consider Plaintiff's daily activities. (T 41-42) Plaintiff explained in a Function Report dated August 8, 2008 that he was able to care for his personal needs, ride a lawn mower to his mother's house, watch television, sit on the porch and talk with others, accompany his mother on errands, prepare simple meals using the microwave or oven, wash dishes and laundry, do general cleaning, use a computer, and play video games. (T 170-77) In recounting these and concluding that they were not inconsistent with sedentary work, the ALJ appropriately relied on Plaintiff's daily activities, among other evidence, in assessing his credibility. See Macia, 829 F.2d at 1012 (citation omitted); see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (listing daily activities among the factors that may be considered in evaluating the intensity and persistence of a claimant's symptoms).

Although Plaintiff states that witness Patricia Joiner was available to corroborate his allegations, but the ALJ "did not want to call her" to testify (Dkt. 13 at 5), the transcript shows that the ALJ asked Plaintiff's attorney if Patricia Joiner would provide new information and counsel answered that her testimony "would [not] be anything but cumulative." (T 27)

An ALJ may consider testimony from "other non-medical sources" such as relatives, spouses, neighbors, and friends in determining how a claimant's impairments affect work-related abilities. 20 C.F.R. § 404.1513(d)(4).  But where a prospective witness would offer only cumulative testimony, there was no error in failing to hear testimony from Plaintiff's witness. See McCloud v. Barnhart, 166 F. App'x 410, 417 (11th Cir. 2006) (unpublished) (per curiam) (citation omitted) ("When the medical evidence supports the ALJ's determination, the ALJ does not err by refusing to admit lay testimony.").

9

As the ALJ clearly articulated reasons for not fully crediting Plaintiff's allegations, and substantial evidence supports the ALJ's credibility determination, this issue does not entitle Plaintiff to relief. See Allen v. Sullivan, 880 F.2d 1200, 1202-03 (11th Cir. 1989) (per curiam).

**B.** Plaintiff also contends that the ALJ erred by not including all of his limitations in his RFC assessment. Specifically, Plaintiff submits that the RFC does not account for his extremity numbness, lack of energy, leg pain, nausea, dizziness, lack of motivation, shortness of breath, hot flashes, and need to lie down during the day. He also states that the RFC fails to accommodate his mental impairments.

The RFC describes the most a claimant can do in a work setting despite limitations resulting from the claimant's impairments. Phillips v.Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). It is based on consideration of the relevant medical and other evidence in the record. Id. An RFC need not include a list of a claimant's impairments, but rather must account for limitations stemming from those impairments. See id. at 1238 (citation omitted). However, the mere existence of impairments does not reveal the extent to which the impairments limit a claimant's ability to work or undermine the ALJ's determination in that regard. See Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (per curiam).

The ALJ described Plaintiff's testimony,[7] discussed treatment notes and opinion evidence, and explained that she gave Plaintiff "every possible benefit of the doubt" in formulating his RFC for sedentary work. (T 42) The ALJ found Plaintiff's lower extremity peripheral neuropathy to be a severe impairment and expressly stated that the RFC took his lower extremity neuropathic

---

[7] The ALJ acknowledged that Plaintiff testified that he experienced "fatigue, weakness, nausea, dizziness, weight loss, blurred vision, numbness in his feet, shortness of breath, depressed mood, and lack of motivation and he was unable to stand or sit for long and had to lie down for about one hour during the day." (T 40)

symptoms into account. (Id.)  Plaintiff's RFC restricts him to walking and/or standing for no more than two (2) hours a day and only occasional climbing of stairs and ramps, balancing, stooping, and crouching. (T 39)  It prohibits him from climbing ladders, ropes, or scaffolds, as well as kneeling or crawling, working around dangerous machinery, or working near unprotected heights.  (Id.)  As Plaintiff does not explain how the RFC fails to accommodate his extremity numbness and leg pain, this contention is without merit.

Plaintiff also claims that the RFC should have included restrictions related to his dizziness, nausea, shortness of breath, and hot flashes, but he fails to explain how these complaints impact his ability to work or cite any record evidence to support his allegation.  Notably, the ALJ referred to treatment notes stating that Plaintiff's nausea and dizziness were improving. (T 40)  In addition, Plaintiff denied pulmonary symptoms in a June 2010 physician's visit (T 414), and the records show that results were normal from a cardiovascular stress test and cardiac imaging in April 2009 (T 40, 346-47).  Moreover, at the hearing, Plaintiff indicated that he had recently seen a cardiologist and been cleared of any heart-related problems.  (T 21, 30-31)  As to his hot flashes, Plaintiff cites no record evidence supporting his contention that hot flashes were a significant complaint.

Plaintiff misinterprets the record in suggesting that he testified that his need to lie down during the day would impact his ability to work. (Dkt. 13 at 5)  While Plaintiff explained that he naps for about an hour at 2 p.m. daily, he specifically clarified that he mostly "sit[s] on the couch" during the day as opposed to lying down.[8] (T 24)  The ALJ's RFC assessment permits Plaintiff to

---

[8] The following exchange occurred between Plaintiff and his attorney at the hearing:

Attorney: "How much of a nap do you take each day?"
Plaintiff: "Oh, around 2:00 or so I'm, I'm, I'm down for an hour, at least."
Attorney: "And if you're not napping, you're still lying down?"
Plaintiff: "Well, I sit on the couch quite a bit. You know, my legs hurt a lot, so I don't – I

11

spend the vast majority of the workday (six hours) sitting. Plaintiff does not explain why this is inadequate or point to record evidence suggesting that a greater limitation is warranted.

The ALJ properly evaluated the evidence regarding Plaintiff's depression, explaining that although he was diagnosed with depression and took antidepressants, there was no evidence of significant mental status abnormalities. (T 41-42)  An examining psychologist opined Plaintiff had adequate control of his thoughts and behavior, moderate focus and concentration, and ability to apply judgment to problem situations. (Id.)  Again, Plaintiff fails to identify what mental impairments are not already addressed by his RFC, which incorporates nonexertional limitations by prohibiting work that involves detailed or complex tasks and restricting Plaintiff to only occasional interaction with the public. (T 39)

For these reasons, the ALJ appropriately evaluated the evidence to determine Plaintiff's RFC and did not err in failing to include limitations that were not supported by the record.  The RFC is supported by substantial evidence.

### III. Conclusion

For the foregoing reasons, the ALJ's decision is supported by substantial evidence and the proper legal principles.  Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)     the decision of the Commissioner be **AFFIRMED** and the case **DISMISSED**, with each party to bear its own costs and expenses; and

---

can't walk all day long."

(T 24)

(2)     the Clerk of Court enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).


**Date: July 26, 2013**

_____
ELIZABETH A JENKINS
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).